THIS ORDER IS APPROVED.

Dated: July 1, 2014

Brenda Moody Whinery, Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| ENRICO BAFFERT LAOS and BETH ANNE LAOS, husband and wife,<br><br>                Debtors. | Chapter 7 Proceeding<br><br>Case No. 4:11-bk-07828-BMW |
| CRAIG NASCH and DELYTE NASCH,<br><br>                Plaintiffs,<br><br>v.<br><br>ENRICO BAFFERT LAOS and BETH ANNE LAOS,<br><br>                Defendants. | Adversary Case No. 4:13-ap-00037<br><br>**MEMORANDUM DECISION** |

I. **INTRODUCTION**

This matter came before the Court pursuant to the *Complaint to Determine Non-Dischargeability of Debt Based on 11 U.S.C. §§ 523 (a)(2), (4), and (6)* (the "Complaint") filed by Craig and Delyte Nasch (the "Nasches" and/or "Plaintiffs") seeking relief against Enrico Baffert Laos and Beth Anne Laos (the "Laos'" and/or "Debtors") on January 11, 2013. A trial

was conducted on October 23, 2013. The Court now rules, denying the relief requested in the Complaint for the reasons set forth in this Memorandum Decision.

## II. STATEMENT OF JURISDICTION

This court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(I). This decision constitutes this Court's findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052.

## III. FACTUAL AND PROCEDURAL BACKGROUND

This case involves a transaction in which Plaintiffs and Debtors entered into an oral contract for the sale of a horse named Buddy. In the fall of 2007, Ms. Laos posted an advertisement for the sale of Buddy on the website EquineHits.com. The advertisement provided as follows:

> "We have had Buddy for 5 years. He is my 10 yo daughter's horse. He adores to be ridden and has great endurance. These pictures were taken in June 07 and we were getting ready for a parade. July 07 Buddy won 1st place in the Best Young Cowgirl competition out of 156 contestants. He is extremely fast and smart. He loves our family and must go to an approved home that will love him as much as we do. He has had the best of care. We are moving and must sell, but only to a great family. He is perfect for the junior rodeo circuit, and western pleasure. He also knows cattle."

Ms. Nasch responded to the advertisement expressing interest in purchasing the horse for her ten-year-old son. Beginning on September 5, 2007, Ms. Laos and Ms. Nasch engaged in a series of email and telephone exchanges regarding the purchase of Buddy. Such emails were admitted into evidence at the trial.

The parties met in person in Show Low, Arizona on September 30, 2007 to give Ms. Nasch an opportunity to inspect and ride Buddy. After that meeting, the parties entered into an oral agreement for the purchase of the horse. The undisputed terms of the oral agreement were

that (1) the Plaintiffs would pay a $1,500 deposit to "hold" the horse; (2) the purchase price of the horse would be $5,000; and (3) the sale was conditioned upon a veterinary check of the horse. On November 15, 2007, the Plaintiffs deposited the $1,500 into an existing joint bank account owned by the Debtors. The remaining sum of $3,500 was deposited into the same joint bank account on December 3, 2007.

On December 8, 2007, the parties met in Oracle, Arizona for the purpose of delivering Buddy to the Plaintiffs, who were to take him for a veterinary check. The weather on December 8, 2007 was cold and rainy, and Plaintiffs were unable to load the horse into their trailer. After nearly two hours of attempting to load the horse, Plaintiffs told Ms. Laos that they no longer wanted to purchase the horse, as they had determined the horse was aggressive and not suitable for a young child.

The Nasches testified that they then requested a refund of their money. Although they testified that Ms. Laos told them they would get their money back, Ms. Laos testified that she offered to take Buddy to Prescott for them. Ms. Nasch disputed that such offer was ever made. Ms. Laos also testified that the funds were only refundable if the horse failed a veterinary check. In this case the veterinary check was never performed. It is undisputed that the oral agreement was terminated because the Plaintiffs deemed the horse unsuitable for a young child, not because of the veterinary check.

After the failed transfer of the horse, communication between the parties broke down and Ms. Laos kept the $5,000 paid to her by the Nasches. On December 28, 2007, the Nasches filed a civil complaint in the Verde Valley Justice Court, Yavapai County, Arizona seeking recovery of the funds paid to Debtors. The Debtors never answered the complaint and on May 8, 2008, the Nasches were awarded a default judgment in the amount of $5,000, plus interest of 10% per annum from the date of the judgment, as well as $200.38 in court costs.

The Debtors filed their petition for relief under Chapter 7 on March 24, 2011 (the "Petition Date"), thus commencing this case. Plaintiffs were not originally listed in the Debtors' schedules and were not given notice of the bankruptcy case.

On September 4, 2012, the Nasches applied for a writ of garnishment against Debtors in the amount of $7,300.38, which application was granted by the state court at a hearing on December 3, 2012.

On December 7, 2012, Debtors amended Schedule F to list Plaintiffs as creditors holding an unsecured claim based upon the judgment in the amount of $7,500 (Docket No. 125). Debtors filed their *Motion to Set Deadlines for Added Claim, and Confirm Bankruptcy Stay* on December 7, 2013, requesting that this Court enter an order imposing a stay as to Plaintiffs' claim, bar the garnishment, and set a deadline for Plaintiffs to initiate a nondischargeability action (Docket No. 126). On December 20, 2012, the Court entered an order prohibiting Plaintiffs from taking any collection action against Debtors and granting Plaintiffs thirty days to commence a nondischargeability action (Docket No. 135).

On January 11, 2013, Plaintiffs filed their Complaint, thus commencing this adversary (Adv. Docket No. 1). The Debtors filed an Answer, and the matter was ultimately set for trial. A trial on the Complaint was held on October 23, 2013. On November 22, 2013, the parties submitted their post-trial memoranda in support of their respective positions.

## IV.     ISSUES

1. Whether Ms. Laos made a false representation regarding the suitability of the horse, which she knew at the time to be false, made with the intention and purpose of deceiving Plaintiffs, which was relied upon by Plaintiffs, and because of which they suffered loss and damages as a proximate result.

2. Whether Debtors committed embezzlement by not returning funds paid to them by the Plaintiffs.

3. Whether Debtors willfully and maliciously injured the Plaintiffs.

/ / /

/ / /

# V. DISCUSSION

## A. Legal Standard

The exceptions to discharge found in 11 U.S.C. § 523 are to be construed narrowly and in favor of the debtor. *Hayhoe v. Cole* (*In re Cole*), 226 B.R. 647, 653 (B.A.P. 9th Cir. 1998). The party objecting to a debtor's discharge under section 523 has the burden of proof and must prove any particular exception in section 523 by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

## B. 11 U.S.C. § 523(a)(2)(A)

Pursuant to 11 U.S.C. § 523(a)(2), a debtor may not receive a discharge from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2). To succeed on a § 523(a)(2)(A) claim, the creditor must prove that: (1) the debtor made representations; (2) that at the time the debtor knew were false; (3) the debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. *Ghomeshi v. Sabban* (*In re Sabban*), 600 F.3d 1219, 1222 (9th Cir. 2010).

The Nasches contend that Ms. Laos made a false representation by advertising Buddy as a horse suitable for children. Although the advertisement itself states that Buddy was her daughter's horse and that he was "perfect for the junior rodeo circuit," it makes no other representation as to Buddy's suitability for children. Ms. Laos did, however, concede at trial that she represented the horse to be suitable for children. Even with this concession, the Nasches need to prove by a preponderance of the evidence that at the time Ms. Laos posted the advertisement, and made the representation, she knew that such representation was false. The Nasches testified that they came to the conclusion that Buddy was not suitable for children based only upon his behavior on December 8, 2007, when the horse refused to get into their trailer and, according to their testimony, kicked at them.

Ms. Laos testified that her representation as to suitability was based upon her daughters' experiences riding the horse, during which he had never displayed bad conduct. Ms. Laos' daughters testified that they began riding this horse when they were young and never had an experience with Buddy in which he acted aggressively or put them in fear of being injured. Both daughters testified that they rode Buddy bareback and used him for barrel racing. No evidence was presented to contradict this testimony and the Court finds this specific testimony credible. There is no evidence in the record that any of the statements made in the advertisement were false. There is therefore no persuasive evidence that the representation as to suitability was false, nor that if it was false, Ms. Laos knew it to be false at the time it was made. There was also no evidence presented by Plaintiffs establishing any intent to deceive the Plaintiffs as to the suitability of the horse. Having come to this conclusion, there is no need to go further with the elements required under § 523(a)(2)(A). The Plaintiffs have failed to carry their burden of proof. Accordingly, Plaintiffs' request for denial of the Debtors' discharge pursuant to 11 U.S.C. § 523(a)(2)(A) is denied.

### C. 11 U.S.C. 523(a)(4)

Pursuant to 11 U.S.C. § 523(a)(4), a debtor may not receive a discharge for a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." 11 U.S.C. § 523(a)(4). In this case, the Plaintiffs only assert embezzlement, therefore the other elements of section 523(a)(4) will not be discussed. Embezzlement under § 523(a)(4) does not require an act by someone in a fiduciary capacity. *In re Pemstein*, 492 B.R. 274, 282 (B.A.P. 9th Cir. 2013). Federal law, not state law, controls with respect to the definition of embezzlement pursuant to § 523(a)(4). *First Delaware Life Ins. Co. v. Wada* (*In re Wada*), 210 B.R. 572, 576 (B.A.P. 9th Cir. 1997). Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been [e]ntrusted or into whose hands it has lawfully come." *Id.*

To succeed on a claim of embezzlement, a creditor must prove: (1) the property was rightfully in the possession of a non-owner; (2) the non-owner appropriated the property to a use other than which it was entrusted; and (3) circumstances indicating fraud. *Transamerica*

*Commercial Finance Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991). Embezzlement does not always require a pre-existing obligation to keep the funds in a separate account. *In re Wada*, 210 B.R. at 576. However, the payment of funds pursuant to contract confers ownership of the funds. *Id.*

The first issue to be considered is whether, under these circumstances, Ms. Laos was a non-owner for purposes of § 523(a)(4). An owner of funds cannot embezzle funds which belong to them, and where a creditor voluntarily gave funds to a debtor, without a specific entrustment, there can be no embezzlement. *Lunbeck v. Marigmen (In re Marigmen)*, 2013 WL 5676866, at *4 (N.D. Cal. Oct. 11, 2013). Generally, where there is no security agreement, the funds received by a debtor belong to a debtor and there is no embezzlement. *D'agata v. Hogan (In re Hogan)*, 193 B.R. 142, 145 (Bankr. N.D.N.Y. 1995).

In determining whether a debtor was a non-owner, the Bankruptcy Appellate Panel of the Ninth Circuit recognized that ownership of funds paid pursuant to a contract is transferred upon payment. *In re Wada*, 210 B.R. at 576. The Bankruptcy Appellate Panel distinguished between an ordinary contract payment and a payment which was made to a travel agent for the purpose of arranging travel accommodations. *Id.* It explained that in the latter situation, the travel agent had no contractual right to the funds paid to her, but was only to apply them for the arrangement of travel accommodations. *Id.* Because the travel agent had no right to the funds, the Bankruptcy Appellate Panel concluded that the travel agent was a non-owner under § 523(a)(4). *Id.* at 577.

There is no dispute in this case that the Plaintiffs deposited $5,000 into a joint bank account owned by the Debtors, and that such funds were commingled with Debtors' any existing funds in such account. There is also no dispute that $5,000 constituted the full purchase price for the horse, nor that the sale was conditioned upon a veterinary check. There is a dispute as to when the funds would be refundable. The Plaintiffs assert that they considered the funds refundable until the horse passed a veterinary check and Ms. Laos testified that she considered the funds non-refundable unless the horse failed a veterinary check.

Regardless of whether the funds were refundable under any circumstances, there is no evidence that the funds were to be held in a separate, segregated account, nor that there was any restriction placed upon the use of such funds. Given the circumstances, when the Plaintiffs deposited the $5,000 into the Debtors' account, ownership of the money was transferred to Debtors. This was an ordinary contract payment. The fact that the parties were ultimately unable to complete the transaction as provided in the contract does not mean that Debtors did not become the owners of the funds upon their receipt. Although the Plaintiffs may have a valid claim against the Debtors to recover the money they paid for the horse, which the Debtors apparently do not contest, that claim arises under contract.

The Court finds and concludes that, given the totality of the evidence, the Debtors were <u>not</u> non-owners of the funds for the purposes of § 523(a)(4). Accordingly, the conditions of § 523(a)(4) have not been met and Plaintiffs' request for denial of Debtors' discharge pursuant to 11 U.S.C. § 523(a)(4) is denied.

### D. 11 U.S.C. 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). Tortious conduct is a required element for a debt to be non-dischargeable under § 523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). Thus, § 523(a)(6) requires a two-part analysis: (1) examining whether a debtor's conduct was tortious, and (2) determining whether a debtor's conduct was both "willful" and "malicious." *Id.* (citing *In re Jercich*, 238 F.3d 1202, 1205 (9th Cir. 2001). State law determines whether a debtor's conduct constitutes a tort. *Id.* A "simple breach of contract is not the type of injury addressed by § 523(a)(6)", and an "intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct." *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1153–54 (9th Cir. 1992).

The tort asserted by the Plaintiffs is that of conversion. Under Arizona law, conversion is defined as "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the

other the full value of the chattel." *Universal Marketing and Entertainment, Inc. v. Bank One of Arizona, N.A.*, 203 Ariz. 266, 268 (App. 2002). In an action for conversion, the "plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143 (App. 2004). While money is generally not the subject of a conversion claim, it can be provided that it "can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91 (1973). However, without a means to identify money, such as segregation, no conversion action lies. *Gehrke*, 208 Ariz. at 145.

As previously discussed, the parties dispute whether, and under what circumstances, the $5,000 was refundable. However, even assuming that the money was refundable and the Nasches had the right to immediate possession of it, there is no evidence to indicate that the parties agreed that the funds paid to Debtors were to be segregated or treated in a specific manner. Instead, the money was deposited into the joint bank account owned by Debtors. Therefore, because the funds were not subject to any agreement regarding segregation, or a specific treatment, the Plaintiffs have not established a cause of action for conversion under Arizona law. Instead, their cause of action arises from a breach of contract, which the Ninth Circuit has concluded is not the type of injury properly addressed by § 523(a)(6). *In re Riso*, 978 F.2d at 1153–54. Therefore, the Plaintiffs have failed to meet the burden of proof under § 523(a)(6) and their request for denial of the Debtors' discharge pursuant to 11 U.S.C. § 523(a)(6) is denied.

## VI. CONCLUSION

As set forth above, and based upon the totality of the evidence, the Court finds and concludes that the Plaintiffs have failed to establish, by a preponderance of the evidence, that they are entitled to the relief requested in their Complaint for denial of the Debtors' discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (4) and (6), and such request for relief is therefore denied. A separate judgment will be entered.

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:

Enrico Baffert Laos
PO Box 36492
Tucson, AZ 85740-6492

Beth Anne Laos
11310 E Edison St
Tucson, AZ 85749

Steven M. Cox
Waterfall Economidis Caldwell Hanshaw & Villamana, P.C.
5210 E. Williams Cir, Ste 800
Tucson, AZ 85711
*Attorney for Defendants*

Pernell W. McGuire
Aubrey Laine Thomas
Davis Miles McGuire Gardner, PLLC
320 N Leroux St, Ste A
Flagstaff, AZ 86001
*Attorney for Plaintiffs*

Stanley J. Kartchner,
Chapter 7 Trustee
7090 N Oracle Rd #178-204
Tucson, AZ 85704

Office of the U.S. Trustee
230 N First Ave, Ste 204
Phoenix, AZ 85003